UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA



FILED

2017 DEC 11 P 2: 07

U.S. DISTRICT COURT
EASTERN DIST. TENN.

_____DEPT. CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* LISA VETETO and RONDA BUTLER,<br>THE STATE OF TENNESSEE,<br>*ex rel.* LISA VETETO and RONDA BUTLER,<br><br>Plaintiffs/Relators<br><br>v.<br><br>DR. WENDELL McABEE, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.1:09-CV-126<br>Collier/Lee<br><br><br>**FILED UNDER SEAL** |

## NOTICE OF DISMISSAL

The parties having reached a settlement agreement ("Settlement Agreement"), which is attached hereto as Exhibit A, the United States, the State of Tennessee, and Relators Lisa Veteto and Ronda Butler hereby stipulate pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure that the above-styled action shall be dismissed, subject to the terms of the Settlement Agreement, as follows, with each party to bear its own costs:

(1) As to the United States and the State of Tennessee, the action is dismissed with prejudice only as to the Covered Conduct released in the Settlement Agreement; and

(2) As to the Relators, the action is dismissed in its entirety, with prejudice.

The parties further stipulate that this Honorable Court shall retain jurisdiction to enforce the terms of the Settlement Agreement.

Respectfully submitted,

For the United States:

NANCY STALLARD HARR
United States Attorney

By: _____

JEREMY S. DYKES, Maryland Bar Member
ROBERT C. MCCONKEY, III BPR #018118
Assistant U.S. Attorneys
United States Attorney's Office
800 Market St., Suite 211
Knoxville, TN 37902
(865) 545-4167
jeremy.dykes@usdoj.gov
robert.mcconkey@usdoj.gov

For the State of Tennessee:

HERBERT H. SLATERY III
Attorney General and Reporter

By: _____

Jessica Myers, BPR #025595
Assistant Attorney General
Tennessee Attorney General's Office
John Sevier Building
500 Charlotte Avenue North
Nashville, Tennessee 37243
(615) 741-6421
jessica.myers@ag.tn.gov

For the Relators:

_____

O. Michael Carter, Esq.
9405 Apison Pike
Ooltewah, TN 37363
(423) 315-3816
repmike29@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December, 2017, a true and correct copy of the foregoing Notice of Dismissal was sent via email and mailed first class, postage prepaid to the following:

O. Michael Carter
9405 Apison Pike
Ooltewah, TN 37363
repmike29@gmail.com
*Counsel for Relators*

Jessica Myers
Assistant Attorney General
Tennessee Attorney General's Office
John Sevier Building
500 Charlotte Avenue North
Nashville, TN 37243
jessica.myers@ag.tn.gov
*Counsel for State of Tennessee*

William Ramsey
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
ramseywt@nealharwell.com
*Counsel for Defendants*

_____
JEREMY S. DYKES
Assistant United States Attorney

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively the "United States"); the State of Tennessee ("Tennessee"); Coffee Medical Group, LLC ("CMG"); and Lisa Veteto and Ronda Butler ("Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.     CMG is a for-profit limited liability company organized under the laws of Tennessee. Its address was formerly 1001 McArthur Drive, Manchester, Tennessee, where it did business as United Regional Medical Center; its address is currently 481 Interstate Drive, Manchester, Tennessee, where it does business as Unity Medical Center. CMG, among other things, provides or provided emergent care, surgery, medical imaging, cardiology, and specialty care services at its facilities in Manchester, TN.

B.     On May 13, 2009, Relators filed a *qui tam* action in the United States District Court for the Eastern District of Tennessee captioned *United States of America and State of Tennessee ex rel. Veteto, et al.v. McAbee, et al.*, No. 1:09-CV-00126, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), and the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 to -185. (the "Civil Action"). Among other things, Relators alleged that CMG submitted claims to the United States and Tennessee for patients referred by physician Gary Bryant in violation of the Stark statute, 42. U.S.C. § 1395 ("Stark"), and the Anti-Kickback statute, 42

GOVERNMENT
EXHIBIT
A

U.S.C. § 1320a-7b ("AKS"). The United States and Tennessee are filing contemporaneously with the execution of this Agreement a notice of their respective elections to intervene for the purpose of settlement of the Civil Action filed by Relators.

C.     The United States and Tennessee contend that CMG submitted or caused to be submitted claims for payment to the Medicare Program ("Medicare"), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1, and the Medicaid Program ("Medicaid"), 42 U.S.C. §§ 1396-1396w-5, through Tennessee's Medicaid program known as TennCare.

D.     The United States and Tennessee contend that they have certain civil claims against CMG arising from the following conduct during the period from April 1, 2007 through March 30, 2011:

   i.     In April 2007, CMG entered into a series of transactions with Dr. Gary Bryant through which it paid remuneration and provided other financial benefits intended to induce Dr. Bryant to refer patients to CMG. On April 24, 2007, CMG entered into a written agreement with Dr. Bryant providing free rent for office space for one year, setting rent thereafter at an amount significantly less than the rent CMG was paying for the space, and providing Dr. Bryant with a stipend. In addition, CMG gave Dr. Bryant membership "shares" in CMG and paid off one of his debts. These financial arrangements failed to meet the requirements of 42 U.S.C. § 1395nn, the Stark law, and violated the AKS, 42 U.S.C. §1320a-7b(b).

   ii.     As such, the United States and Tennessee contend that from April 1, 2007 through March 30, 2011, CMG submitted or caused the submission of

individual false claims to the Medicare and TennCare/Medicaid programs for items and services provided to specific patients referred to CMG by physician Gary Bryant pursuant to the financial arrangements described above.

The conduct described in this paragraph D is referred to below as the "Covered Conduct."

E.      This Agreement is neither an admission of liability by CMG nor a concession by the United States or Tennessee that their claims are not well founded.

F.      Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.      CMG shall pay to the United States and to Tennessee, collectively, the total sum of Eight Hundred Ten Thousand dollars ($810,000) ("Settlement Amount"), and interest on the Settlement Amount at a rate of 1.65% from January 1, 2013 (collectively, the Settlement Amount and interest shall be referred to as the "Settlement Proceeds"), to be paid as follows:

a.      CMG will pay the United States the total sum of Seven Hundred Sixty Thousand Nine Hundred Fifty dollars ($760,950), plus interest at a rate of 1.65% per annum from January 1, 2013 ("Federal Settlement Amount"), as specified below. CMG will pay Tennessee the total sum of Forty-Nine Thousand Fifty dollars ($49,050),

3

plus interest at a rate of 1.65% per annum from January 1, 2013 ("Tennessee Settlement Amount"), as specified below:

       i.      CMG will make an initial payment to the United States in the amount of $48,856.46 within ten (10) days of the Effective Date of this Agreement. In addition, CMG will make an initial payment to Tennessee in the amount of $3,149.13 within ten (10) days of the Effective Date of this Agreement.

       ii.      CMG will make sixteen quarterly payments to the United States and Tennessee as set forth in Attachments A and B.

       iii.      All payments made by CMG to the United States and to Tennessee will be made by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of Tennessee.

       iv.      The membership interests of CMG are pledged as security for the unpaid balance of the Settlement Proceeds and any interest owed thereon. CMG shall, within 20 days of the Effective Date of this Agreement, ensure that the appropriate individuals or entities (a) execute any certificate that may be required to indicate the security interest of the United States and Tennessee thereon, (b) complete and execute any applications for notation of the United States and Tennessee's security interest or other comparable forms required by applicable law in conjunction with the executed certificates in order to perfect the United States and Tennessee's security interests, and CMG shall file at its expense the items in subsections (a) and (b), along with such other certificates, agreements, notices, or other comparable forms as may be necessary with the appropriate governmental authority in the applicable jurisdiction in order to perfect the United States and Tennessee's security interests. Further, CMG agrees to provide copies

4

of all such filings to the United States and Tennessee within twenty (20) days of any such filings.

> v.     This Agreement represents a temporary covenant not to sue that will mature into a release upon full and timely payment of all installments detailed in Paragraph 1 (a) ( i – iii) above.

2.     Conditioned upon the United States receiving from CMG the payments specified in Paragraph 1(a) (i – iii), the United States agrees that it shall pay to Relators by electronic funds transfer eighteen percent (18%) of each payment received under the Agreement as soon as feasible after receipt of the payment.

3.     In the event that CMG sells all or a significant amount of its assets to another non-affiliated entity, then all remaining payments owed pursuant to the Agreement shall be accelerated and shall become immediately due and payable by CMG. Specifically, CMG shall pay the entire remaining principal, as well as any interest that has accrued on the remaining principal through the advanced payment date, owed in the Settlement Proceeds.  In the event that CMG merges its assets with another non-affiliated entity, then all obligations under this Agreement shall remain binding on the resulting entity.

4.     Subject to the exceptions in Paragraph 9 (concerning excluded claims) and Paragraph 20 (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), and conditioned upon CMG's full payment of the Settlement Proceeds, the United States releases CMG from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil

5

Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act,

31 U.S.C. §§ 3801-3812; the civil monetary provisions of the Stark law, 42. U.S.C.

§1395nn (g) (3); and the common law theories of payment by mistake, unjust enrichment,

and fraud.

5.      Subject to Paragraphs 9 and 20, and conditioned upon payment in full of

the Settlement Proceeds, the State of Tennessee (on behalf of itself, its officers, agents,

agencies, and departments) agrees to release CMG from any civil or administrative

monetary claim Tennessee has or may have for the Covered Conduct under the

Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181, to -185, and the

common law theories of payment by mistake, unjust enrichment, conversion, and fraud;

Tennessee does not have the authority, and does not intend, to release CMG from any

claims or actions that may be asserted by private payors or insurers, including those that

are paid by TennCare on a capitated basis.

6.      In consideration of the obligations of CMG in this Agreement and the

Corporate Integrity Agreement ("CIA"), entered into between OIG-HHS and CMG, and

conditioned upon CMG's full payment of the Settlement Proceeds, the OIG-HHS agrees

to release and refrain from instituting, directing, or maintaining any administrative action

seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as

defined in 42 U.S.C. § 1320a-7b(f)) against CMG under 42 U.S.C. § 1320a-7a (Civil

Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud,

kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in

Paragraph 9 (concerning excluded claims), below, and as reserved in this Paragraph. The

OIG-HHS expressly reserves all rights to comply with any statutory obligations to

6

exclude CMG from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below.

7.     In the event that CMG fails to pay any amount as provided in Paragraph 1 within five (5) business days of the date on which such payment is due, CMG shall be in default of its payment obligations ("Default"). The United States will provide written notice of the Default to CMG and it shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to a representative of CMG that CMG shall designate in advance in writing. If CMG fails to cure such Default within five (5) business days of receiving the Notice of Default, the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance). CMG shall consent to a Consent Judgment in the amount of the unpaid balance, and the United States, at its sole option, may: (a) offset the remaining unpaid balance from any amounts due and owing to Defendant by any department, agency, or agent of the United States at the time of Default; (b) collect the entire unpaid balance of the Settlement Amount, plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this Paragraph; (c) file a civil action for the Covered Conduct; or (d) exercise any other rights granted by law or in equity, including referral of this matter for private collection. In the event a complaint

7

is filed pursuant to subsection (c) of this Paragraph, CMG agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories to the allegations in the complaint, except to the extent such defenses were available to CMG on the Effective Date of this Agreement. CMG agrees not to contest any consent judgment, offset, or any collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court. CMG shall pay the United States all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses.

8.     Notwithstanding the foregoing, in the event of Default as defined in Paragraph 7, above, OIG-HHS may exclude CMG from participating in all Federal health care programs until CMG pays the Settlement Amount and reasonable costs as set forth in Paragraph 7, above. OIG-HHS will provide written notice of any such exclusion to CMG. CMG waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion CMG wishes to apply for reinstatement, CMG must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. CMG will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

9.     Notwithstanding the releases given in Paragraphs 4, 5, 6, and 12 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

8

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement;

f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g. Any liability for failure to deliver goods or services due;

h. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; or

i. Any liability of individuals.

10. Notwithstanding the releases given in Paragraphs 4, 5, 6, and 12 of this Agreement, or any other term of this Agreement, the following claims of the State of Tennessee are specifically reserved and are not released:

a. Any criminal, civil, or administrative liability arising under the State of Tennessee's revenue codes;

b. Any criminal liability;

9

c.   Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from the TennCare program;

d.   Any liability to Tennessee for any conduct other than the Covered Conduct;

e.   Any liability based upon obligations created by this Agreement;

f.   Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g.   Any liability for failure to deliver goods or services due;

h.   Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

i.   Any liability of individuals; or

j.   Any liability to the State of Tennessee individual consumers or state program payors for claims involving unfair and/or deceptive acts or practices and/or violations of consumer protection laws.

11.   Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and Tenn. Code Ann. § 71-5-183(c)(2)(B). Conditioned upon Relators' receipt of the payment described in Paragraph 2, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, Tennessee, and their respective agencies, officers, agents, employees, and servants, from

10

any claims arising from the filing of the Civil Action, under 31 U.S.C. § 3730, or under Tenn. Code Ann. § 71-5-183, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

12. Subject to Paragraphs 9 and 20, and conditioned upon CMG's full payment of the Settlement Proceeds, Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release CMG, and its officers, agents, and employees, from any liability to Relators arising from the filing of the Civil Action, except for expenses or attorney's fees and costs under 31 U.S.C. § 3730(d) and Tenn. Code Ann. § 71-5-183(d).

13. CMG has provided sworn financial disclosure statements ("Financial Statements") to the United States and Tennessee, and the United States and Tennessee have relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. CMG warrants that the Financial Statements are complete, accurate, and current. If the United States or Tennessee learn of asset(s) in which CMG had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States or Tennessee learns of any misrepresentation by CMG on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $4,050 or more, the United States and Tennessee may at their option: (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of CMG previously undisclosed. CMG agrees not to contest any collection action undertaken by the United States and Tennessee pursuant to this provision, and

11

immediately to pay the United States and Tennessee all reasonable costs incurred in such an action, including attorneys' fees and expenses.

14.     In the event that the United States or Tennessee, pursuant to Paragraph 13 (concerning disclosure of assets), above, opt to rescind this Agreement, CMG agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States or Tennessee within ninety (90) calendar days of written notification to CMG that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement.

15.     CMG waives and shall not assert any defenses that CMG may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, or under analogous provisions of the Tennessee Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.  Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States or Tennessee concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

16.     CMG fully and finally releases the United States and Tennessee, their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that CMG has

12

asserted, could have asserted, or may assert in the future against the United States and Tennessee, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and Tennessee's investigation and prosecution thereof.

17.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payor, related to the Covered Conduct; and CMG agrees not to resubmit to any Medicare contractor or any state payor any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

18.     CMG agrees to the following:

a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of CMG, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit and civil investigation of the matters covered by this Agreement;

(3)     CMG's investigation, defense, and corrective actions undertaken in response to the United States' audit and civil investigation

13

in connection with the matters covered by this Agreement (including attorney's fees);

    (4)    the negotiation and performance of this Agreement;

    (5)    the payments CMG makes to the United States and Tennessee pursuant to this Agreement and any payments that CMG may make to Relators, including costs and attorneys' fees; and

    (6)    the negotiation of, and obligations undertaken pursuant to the CIA to:

        (i)    retain an independent review organization to perform annual reviews as described in Section III of the CIA; and

        (ii)    prepare and submit reports to the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs"). However, nothing in Paragraph 18a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to CMG.

    b.    Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by CMG, and CMG shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or

14

payment request submitted by CMG or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

            c.        Treatment of Unallowable Costs Previously Submitted for Payment: CMG further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by CMG or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. CMG agrees that the United States, at a minimum, shall be entitled to recoup from CMG any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

        Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by CMG or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on CMG or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.     Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine CMG's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

19.     CMG warrants that it has reviewed its financial situations and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States and Tennessee of the Settlement Proceeds.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to CMG, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which CMG was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, CMG  commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of CMG 's debts, or seeking to adjudicate CMG as bankrupt or insolvent; or (b) seeking appointment

16

of a receiver, trustee, custodian, or other similar official for CMG or for all or any substantial part of CMG's assets, CMG agrees as follows:

a. The obligations of CMG under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and CMG shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) its obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) it was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States and Tennessee; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to CMG.

b. If CMG's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against CMG for the claims that would otherwise be covered by the releases provided in Paragraphs 4, 5, 6, and 12 above. CMG agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and CMG shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) CMG shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 120 calendar

17

days of written notification to CMG that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) the United States has a valid claim against CMG in the amount of $19,965,467, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

        c.     CMG acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

        21.     CMG agrees to cooperate fully and truthfully with the United States' and Tennessee's investigation of individuals and entities not released in this Agreement. Upon reasonable notice, CMG shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. CMG further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

        22.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 23 (waiver for beneficiaries paragraph), below.

18

23. CMG agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

24. Upon receipt of the payments described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

25. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

26. Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

27. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Tennessee. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

28. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

29. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

30.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

31.     This Agreement is binding on CMG's successors, transferees, heirs, and assigns.

32.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

33.     All parties consent to the United States' and Tennessee's disclosure of this Agreement, and information about this Agreement, to the public.

34.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 11/28/16     BY: _____
                        JEREMY S. DYKES
                        **Assistant United States Attorney**
                        **Eastern District of Tennessee**

DATED: 12/13/16     BY: _____
                        ROBERT K. DECONTI
                        **Assistant Inspector General for Legal Affairs**
                        **Office of Counsel to the**
                        **Inspector General**
                        **Office of Inspector General**
                        **United States Department of**
                        **Health and Human Services**


## THE STATE OF TENNESSEE


DATED: _____     BY: _____
                        Herbert H. Slatery III
                        **Attorney General & Reporter**


## DEFENDANT COFFEE MEDICAL GROUP, LLC


DATED: _____     BY: _____
                        Ashoke Mukherji, Esq.
                        **Chief Manager**


## ATTORNEY ON BEHALF OF DEFENDANT COFFEE MEDICAL GROUP, LLC.


DATED: _____     BY: _____
                        William C. McMurrey, Esq.

21

## THE STATE OF TENNESSEE

DATED: _6/30/2016_       BY: _Herbert H. Slatery III_
                             Herbert H. Slatery III
                             Attorney General & Reporter

**THE UNITED STATES OF AMERICA**

DATED: _____        BY: _____
                          JEREMY S. DYKES
                          Assistant United States Attorney
                          Eastern District of Tennessee


DATED: _____        BY: _____
                          ROBERT K. DECONTI
                          Assistant Inspector General for Legal Affairs
                          Office of Counsel to the
                            Inspector General
                          Office of Inspector General
                          United States Department of
                            Health and Human Services


**THE STATE OF TENNESSEE**


DATED: _____        BY: _____
                          Herbert H. Slatery III
                          Attorney General & Reporter


**DEFENDANT COFFEE MEDICAL GROUP, LLC**


DATED: 7.1.16         BY: _____
                          Ashoke Mukherji, Esq.
                          Chief Manager


**ATTORNEY ON BEHALF OF DEFENDANT COFFEE MEDICAL GROUP, LLC,**


DATED: _____        BY: _____
                          William C. McMurrey, Esq.

21

## THE UNITED STATES OF AMERICA

DATED: _____     BY: _____
                        **JEREMY S. DYKES**
                        **Assistant United States Attorney**
                        **Eastern District of Tennessee**


DATED: _____     BY: _____
                        **ROBERT K. DECONTI**
                        **Assistant Inspector General for Legal Affairs**
                        **Office of Counsel to the**
                        **  Inspector General**
                        **Office of Inspector General**
                        **United States Department of**
                        **  Health and Human Services**


## THE STATE OF TENNESSEE


DATED: _____     BY: _____
                        **Herbert H. Slatery III**
                        **Attorney General & Reporter**


## DEFENDANT COFFEE MEDICAL GROUP, LLC


DATED: _____     BY: _____
                        **Ashoke Mukherji, Esq.**
                        **Chief Manager**


## ATTORNEY ON BEHALF OF DEFENDANT COFFEE MEDICAL GROUP, LLC,


DATED: 7/8/16      BY: _____
                        **William C. McMurrey, Esq.**

21

<u>**RELATORS**</u>

DATED: 7/19/16     BY: _Lisa Vittitoe_

DATED: _____     BY: _____

<u>**RELATORS' COUNSEL**</u>

DATED: 8/4/16     BY: _____

Mike Carter

TN Bar # 006853

22

**RELATORS**

DATED: 7/26/16       BY: _Rhonda Butler_____

DATED: _____       BY: _____

**RELATORS' COUNSEL**

DATED: 8/4/16       BY: _____

Tn Bar# 006353

22

Attachment A - Federal Payments

1.625%

| Quarter | Due | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| | 01/01/13 | | | | $ 810,445.63 |
| up front | 01/01/17 | $ 48,856.46 | $ - | $ 48,856.46 | $ 761,589.17 |
| 1 | 04/01/17 | $49,259.65 | $ 3,093.96 | $ 46,165.69 | $ 715,423.48 |
| 2 | 07/01/17 | $49,259.65 | $ 2,906.41 | $ 46,353.24 | $ 669,070.24 |
| 3 | 10/01/17 | $49,259.65 | $ 2,718.10 | $ 46,541.55 | $ 622,528.69 |
| 4 | 01/01/18 | $49,259.65 | $ 2,529.02 | $ 46,730.63 | $ 575,798.06 |
| 5 | 04/01/18 | $49,259.65 | $ 2,339.18 | $ 46,920.47 | $ 528,877.59 |
| 6 | 07/01/18 | $49,259.65 | $ 2,148.57 | $ 47,111.08 | $ 481,766.51 |
| 7 | 10/01/18 | $49,259.65 | $ 1,957.18 | $ 47,302.47 | $ 434,464.04 |
| 8 | 01/01/19 | $49,259.65 | $ 1,765.01 | $ 47,494.64 | $ 386,969.40 |
| 9 | 04/01/19 | $49,259.65 | $ 1,572.06 | $ 47,687.59 | $ 339,281.81 |
| 10 | 07/01/19 | $49,259.65 | $ 1,378.33 | $ 47,881.32 | $ 291,400.49 |
| 11 | 10/01/19 | $49,259.65 | $ 1,183.81 | $ 48,075.84 | $ 243,324.65 |
| 12 | 01/01/20 | $49,259.65 | $ 988.51 | $ 48,271.14 | $ 195,053.51 |
| 13 | 04/01/20 | $49,259.65 | $ 792.40 | $ 48,467.25 | $ 146,586.26 |
| 14 | 07/01/20 | $49,259.65 | $ 595.51 | $ 48,664.14 | $ 97,922.12 |
| 15 | 10/01/20 | $49,259.65 | $ 397.81 | $ 48,861.84 | $ 49,060.28 |
| 16 | 01/01/21 | $49,259.65 | $ 199.31 | $ 49,060.34 | $ (0.06) |
| Total | | $ 837,010.86 | $ 26,565.17 | $ 810,445.69 | |

Notes:

1. The Initial Balance includes 1461 days of interest from January 1, 2013 through January 1, 2017.
2. Assumes date of payment is January 1, 2017.
3. Simple interest is calculated, no compounding.

Attachment B - State Payments

| Quarter | Due | Payment | 1.625% Interest | Principal | Balance |
|---|---|---|---|---|---|
| | 01/01/13 | | | | $ 52,240.43 |
| up front | 01/01/17 | $ 3,149.13 | - | $ 3,149.13 | $ 49,091.30 |
| 1 | 04/01/17 | $3,175.23 | $ 199.43 | $2,975.80 | $ 46,115.50 |
| 2 | 07/01/17 | $3,175.23 | $ 187.34 | $2,987.89 | $ 43,127.61 |
| 3 | 10/01/17 | $3,175.23 | $ 175.21 | $3,000.02 | $ 40,127.59 |
| 4 | 01/01/18 | $3,175.23 | $ 163.02 | $3,012.21 | $ 37,115.38 |
| 5 | 04/01/18 | $3,175.23 | $ 150.78 | $3,024.45 | $ 34,090.93 |
| 6 | 07/01/18 | $3,175.23 | $ 138.49 | $3,036.74 | $ 31,054.19 |
| 7 | 10/01/18 | $3,175.23 | $ 126.16 | $3,049.07 | $ 28,005.12 |
| 8 | 01/01/19 | $3,175.23 | $ 113.77 | $3,061.46 | $ 24,943.66 |
| 9 | 04/01/19 | $3,175.23 | $ 101.33 | $3,073.90 | $ 21,869.76 |
| 10 | 07/01/19 | $3,175.23 | $ 88.85 | $3,086.38 | $ 18,783.38 |
| 11 | 10/01/19 | $3,175.23 | $ 76.31 | $3,098.92 | $ 15,684.46 |
| 12 | 01/01/20 | $3,175.23 | $ 63.72 | $3,111.51 | $ 12,572.95 |
| 13 | 04/01/20 | $3,175.23 | $ 51.08 | $3,124.15 | $ 9,448.80 |
| 14 | 07/01/20 | $3,175.23 | $ 38.39 | $3,136.84 | $ 6,311.96 |
| 15 | 10/01/20 | $3,175.23 | $ 25.64 | $3,149.59 | $ 3,162.37 |
| 16 | 01/01/21 | $3,175.22 | $ 12.85 | $3,162.37 | $ 0.00 |
| Total | | $ 53,952.80 | $ 1,712.37 | $ 52,240.43 | |

**Notes:**

1. The Initial Balance includes 1461 days of interest from January 1, 2013 through January 1, 2017.

2. Assumes date of payment is January 1, 2017.

3. Simple interest is calculated, no compounding.

## MODIFICATION TO SETTLEMENT AGREEMENT

The Settlement Agreement ("Agreement") entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively the "United States"); the State of Tennessee ("Tennessee"); Coffee Medical Group, LLC ("CMG"); and Lisa Veteto and Ronda Butler ("Relators") (hereafter collectively referred to as "the Parties"), with an Effective Date of December 13, 2016, is, by agreement of the Parties, modified as follows:

Paragraph 24 shall be stricken and in its stead, the Agreement shall state,

24.     Upon the United States' and the State of Tennessee's receipt of the initial Settlement Amount payments described in Paragraph 1(a)(i) ($48,856.46 to the United States and $3,149.13 to the State of Tennessee), the Parties will sign and file in the Civil Action a Notice of Dismissal pursuant to Rule 41(a)(1).  The Notice of Dismissal shall request that the Court retain jurisdiction of the Civil Action to enforce the terms of this Agreement.

The undersigned counsel represent and warrant that they are fully authorized to execute this modification to the Agreement on behalf of the persons and entities indicated below.

This modification to the Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

## SIGNATURES ON THE FOLLOWING PAGE

## THE UNITED STATES OF AMERICA

DATED: 6/11/17       BY: _____
                          JEREMY S. DYKES
                          Assistant United States Attorney
                          Eastern District of Tennessee


DATED: _____       BY: _____
                          Lisa Re
                          Assistant Inspector General for Legal Affairs
                          Office of Counsel to the Inspector General
                          Office of Inspector General United States
                          Department of Health and Human Services


## THE STATE OF TENNESSEE

DATED: 10/11/17      BY: _____
                          Herbert H. Slatery III
                          Attorney General & Reporter


## ATTORNEY ON BEHALF OF DEFENDANT COFFEE MEDICAL GROUP, LLC.

DATED: _____       BY: _____
                          William T. Ramsey, Esq.


## ON BEHALF OF RELATORS

DATED: 10/14/17      BY: _____
                          O. Michael Carter, Esq.

2

## THE UNITED STATES OF AMERICA

DATED: ▓▓▓▓        BY: _____
                                 **JEREMY S. DYKES**
                                 **Assistant United States Attorney**
                                 **Eastern District of Tennessee**

DATED: 11/29/17      BY: _____
                                 **Lisa Re**
                                 **Assistant Inspector General for Legal Affairs**
                                 **Office of Counsel to the Inspector General**
                                 **Office of Inspector General United States**
                                 **Department of Health and Human Services**

## THE STATE OF TENNESSEE

DATED: _____       BY: _____
                                 **Herbert H. Slatery III**
                                 **Attorney General & Reporter**

## ATTORNEY ON BEHALF OF DEFENDANT COFFEE MEDICAL GROUP, LLC,

DATED: _____       BY: _____
                                   **William T. Ramsey, Esq.**

## ON BEHALF OF RELATORS

DATED: _____       BY: _____
                                   **O. Michael Carter, Esq.**

2